UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                                          Chapter 11
                                                                Case Nos.: 16-74892 (AST)
                                                                           16-75515 (AST)
OLYMPIA OFFICE LLC, *et. al.*,                                             16-75516 (AST)
                                                                           16-75517 (AST)
            Debtors.                                            (Jointly Administered)

-------------------------------------------------------------x

## ORDER CONCERNING DEBTORS' STANDING TO OBJECT TO NOTEHOLDER CLAIMS AND TRIAL EVIDENTIARY ISSUES

The Court enters this Order in accordance with Federal Rules of Civil Procedure 1, 16, 43, and 44, as incorporated by Rules 1001, 7016, 9014, and 9017 of the Federal Rules of Bankruptcy Procedure, as well as the Federal Rules of Evidence. This Order addresses the standing of Debtors to object to the proofs of claim filed by a secured creditor, as well as certain evidentiary issues raised at and after trial.

Pending before the Court are the following:

MLMT 2005-MCP1 Washington Office Properties, LLC's ("MLMT" or "Noteholder"), Motion for Relief from the Automatic Stay under Bankruptcy Code Sections 362(d)(1), 362(d)(2), and 362(d)(4). [dkt item 94]

MLMT's Motion for Dismissal or Conversion of the above-captioned Bankruptcy Cases under Bankruptcy Code Section 1112(b). [dkt item 95]

Olympia Office LLC's ("Debtors"), Opposition to the Relief from Stay Motion and Motion to Dismiss. [dkt item 107]

MLMT's Reply in Support of the Relief from Stay Motion and Motion to Dismiss. [dkt item 110]

Debtors' Motion to Object to Proof of Claim #4-1, filed by MLMT. [dkt item 127]

MLMT's Memorandum of Law in Opposition to the POC #4-1 Objection. [dkt item 152]

MLMT's Motion to Strike ("Motion to Strike") and Evidentiary Objection to Debtors' Reply. [dkt item 229]

1

MLMT and Debtors' Joint Letter Regarding Admission of Evidence. [dkt item 245]

Debtors' Request for admission of Accountant Report. [dkt item 246]

Debtors' Request to submit David Bornheimer Deposition Transcript and Designations. [dkt items 247, 248]

## BACKGROUND AND PROCEDURAL HISTORY[1]

### Pre-Petition History

In or about 2004, an entity known as CDC Properties I, LLC ("CDC") entered into two loan agreements (the "Loans") with Merrill Lynch Mortgage Lending, Inc. (the "Original Lender"), and secured those Loans with liens against eleven properties located in the State of Washington (the "Original Collateral") pursuant to duly recorded deeds of trust (the "Deeds of Trust"). On or about September 30, 2005, the Original Lender assigned the Loans to Wells Fargo Bank N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2005-MCP1 Commercial Mortgage Pass-Through Certificates, Series 2005-MCP1 ("Wells Fargo") and U.S. Bank, N.A., as Successor-Trustee to LaSalle Bank N.A., as Trustee for the benefit of the Certificate Holders of Commercial Mortgage Pass-Through Certificates, Series MCCMT 2004-C2D ("U.S. Bank" and together with Wells Fargo, "Lenders").

CDC defaulted under the Loans, and on February 10, 2011, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Western District of Washington (the "CDC Bankruptcy Court"), and assigned Case No. 11-41010 (the "CDC Bankruptcy Case"). On November 22, 2011, the CDC Bankruptcy Court confirmed CDC's Plan of Reorganization (the "CDC Plan"), under which, *inter alia*, the Loans and Deeds of Trust remained in effect pursuant

---

[1] The Court assumes familiarity with the facts and procedural history, which are referenced only as necessary to explain the Court's Order. *See* dkt items 33 and 82.

to their terms but with new monthly payment amounts and a new maturity date of October 17, 2017.  The CDC Bankruptcy Case was closed on or about February 15, 2012.

Under the CDC Plan, Midland Loan Services, Inc., a division of PNC Bank, N.A. ("Midland"), acted as special servicer with respect to the Loans secured by the Original Collateral.  While the CDC Plan placed various payment and reserve obligations on the reorganized debtor, the cash generated by operation of CDC's properties was actually collected through a lock box and disbursed through accounts controlled by Midland.

CDC defaulted under its Plan obligations.  On March 11, 2016, Lenders commenced non-judicial foreclosure proceedings against the nine commercial properties that remained from the Original Collateral (the "Properties").  In May 2016, Lenders filed a Petition to Appoint Custodial Receiver in Washington state court to, among other things, obtain the appointment of a receiver over the Properties.  On May 19, 2016, the state court entered its Order Appointing Custodial Receiver, pursuant to which JSH Properties, Inc. was appointed receiver over the Properties.

On or about July 1, 2016, Lenders served and subsequently recorded Notices of Trustee's Sales with respect to the Properties (the "Notices of Sale"), pursuant to which non-judicial foreclosure sales of the Properties were scheduled for October 21, 2016.

On or about September 23, 2016, CDC, without Lenders' consent, transferred all of the Properties by Quitclaim Deeds (the "Transfers") to four different, newly created entities located in four different states other than Washington (New York, Florida, Virginia, and Delaware), as tenants in common.  These four entities are: Olympia Office LLC ("Olympia"); Seahawk Portfolio LLC; Mariners Portfolio LLC; and WA Portfolio LLC (collectively, the "Acquirers").  While each Acquirer, alone, received fractional interests in the Properties, collectively, they

3

obtained 100% ownership of the Properties.  At the time of the Transfers, the outstanding balance

owed on the Loans allegedly exceeded $33 million.

On or about October 18, 2016, the Noteholder succeeded to Lenders' rights under the

Loans and the Deeds of Trust.

### These Debtors' Bankruptcies, Parties' Motions, Evidentiary Hearing, and Post-Hearing Submissions

On October 20, 2016, Olympia filed a voluntary petition under chapter 11 before the United

States Bankruptcy Court for the Eastern District of New York (the "Court").

On November 16, 2016, Noteholder filed a motion with this Court pursuant to 11 U.S.C.

§ 362(d) seeking entry of an order determining that the automatic stay does not apply.  [dkt item

19]

On November 28, 2016, the remaining Acquirers (Seahawk Portfolio, Mariners Portfolio,

and WA Portfolio) each filed chapter 11 cases with this Court (collectively with Olympia,

"Debtors").  These four related cases have been administratively consolidated.

On December 1, 2016, the Court entered an Order that determined, *inter alia*, the

Properties were property of Debtors' estates and the automatic stay applied to the Properties.

[dkt item 33]

On January 27, 2017, Noteholder filed a Motion for relief from the automatic stay

pursuant to §§ 362(d)(1), 362(d)(2), and 362(d)(4) of the Bankruptcy Code (the "Relief from

Stay Motion").  [dkt item 94]

On January 27, 2017, Noteholder filed a Motion for dismissal or conversion of the above-

captioned Bankruptcy Cases pursuant to § 1112(b) (the "Motion to Dismiss").  [dkt item 95]

On January 31, 2017, Noteholder filed a proof of claim asserting that its claim is secured

and it is owed at least $41,613,780.82, including interest, fees, and expenses, pursuant to the

Loans (the "Noteholder POC").  [POC #4-1]

On February 15, 2017, Debtors filed an Opposition to the Relief from Stay Motion and Motion to Dismiss (the "Opposition").  [dkt item 107]

On February 18, 2017, Noteholder filed a reply to the Opposition (the "Reply").  [dkt item 110]

On February 22, 2017, the Court held a preliminary hearing on the Relief from Stay Motion and Motion to Dismiss.

On March 1, 2017, the Court issued a contested matter scheduling Order (the "Scheduling Order"), scheduling an evidentiary hearing on the Relief from Stay Motion and Motion to Dismiss.  [dkt item 121]

On March 8, 2017, Debtors filed an objection to the Noteholder POC (the "POC Objection").  [dkt item 127]

Given that the Relief from Stay Motion, the Motion to Dismiss, and the POC Objection (together, the "Parties' Motions") ultimately effected Debtors' ability to confirm a chapter 11 plan of reorganization and should be heard concurrently, on March 20, 2017, the Court issued an amended contested matter scheduling Order (the "First Amended Scheduling Order"), which provided, *inter alia*, that affidavits of party controlled witnesses including experts, as well as deposition excerpts, shall be filed with the Court no later than May 1, 2017, that any objection to any portion of a witness affidavit, including evidentiary objections, shall be filed no later than May 8, 2017 at 4:00 pm, that the parties shall exchange all exhibits by no later than May 1, 2017, and that an evidentiary hearing on the Parties' Motions would be held on May 11, 2017.  [dkt item 141]

On April 11, 2017, Noteholder filed a memorandum of law in opposition to the POC

Objection (the "Noteholder's POC Opposition").  [dkt item 152]

On April 26, 2017, Debtors filed a Motion to modify the First Amended Scheduling Order (the "Motion to Modify").  [dkt item 159]  In support, Debtors assert, *inter alia*, that a deposition of David Bornheimer ("Bornheimer") was held on April 12, 2017 and needed to be continued, but could not be completed before the deadline of May 1, 2017 to submit affidavits and deposition excerpts to the Court.  Additionally, Debtors assert Centrum Financial Services, Inc. ("Centrum"), an interested party in both the Debtors' bankruptcy case and the CDC Bankruptcy Case, had turned over documents to Debtors on April 20, 2017 that were purportedly related to the amount due under the Loans; thus Debtors needed extra time to investigate the documents in the context of the POC Objection and First Amended Scheduling Order.

On April 27, 2017, the Court entered an Order scheduling an emergency telephonic hearing on the Motion to Modify for May 1, 2017.  [dkt item 161]

On April 28, 2017, the Noteholder filed an objection to the Motion to Modify (the "Objection to Modify"), asserting that Debtors do not have standing to challenge the Noteholder POC or modify the Noteholder's rights under the Loans because Debtors were not parties to the CDC Plan or the underlying loan documents incorporated therein, and have no contractual privity with the Noteholder.  [dkt item 163]

On May 1, 2017, the Court held the emergency hearing on the Motion to Modify and tentatively adjourned the evidentiary hearing pending the parties' attempts to resolve various discovery disputes.  The Court extended the parties' time to file affidavits with the Court and exchange exhibits to May 4, 2017.  The Court adjourned the emergency hearing on the Motion to Modify to May 8, 2017.

On May 4, 2017, the parties filed a stipulated letter requesting the Court extend the time

for the parties to submit exhibits from May 4, 2017 to May 5, 2017.[3]  [dkt item 164]

On May 5, 2017, Debtors filed an Application to Employ Demasco, Sena & Jahelka LLP as Accountants to Debtors (the "Application to Employ Accountant").  [dkt item 166]

On May 5, 2017, the parties filed certain exhibits including witness affidavits with the Court pursuant to the May 1 hearing and May 4 stipulated letter.

On May 8, 2017, the Court held an adjourned emergency hearing on the Motion to Modify at which the Court adjourned the evidentiary hearing to May 24, 2017.

On May 9, 2017, the Court entered an Order granting the Application to Employ Accountant.  [dkt item 178]

On May 9, 2017, Debtors filed a limited response to the Noteholder's POC Opposition (the "POC Limited Response"), asserting, *inter alia*, that Debtors have standing to challenge the Noteholder's claim.  [dkt item 174]

On May 10, 2017, the Court entered a second amended contested matter scheduling Order (the "Second Amended Scheduling Order"), which scheduled an evidentiary hearing on the Parties' Motions for May 24, 2017 and directed the parties to file direct testimony affidavits of witnesses from whom an affidavit could not be obtained prior to May 5, 2017 by supplemental Affidavit signed by the witness(es), as well as any deposition transcripts by no later than 4:00 pm EDT May 15, 2017.  [dkt item 181]

On May 19, 2017, Debtors filed a reply to the Noteholder's POC Opposition (the "POC Reply") [dkt item 226], and attached as an exhibit what they referred to as a preliminary analysis of various bank statements obtained by Debtors in discovery from third party Centrum, which analysis was purportedly prepared by Debtors' accountant and relates to the amount due under

---

[3] The Court "So Ordered" the request on May 9, 2017.  [dkt item 179]

the Loans (the "Accountant Report").  [dkt item 226-1]

On May 22, 2017, Debtors filed an emergency Motion to compel Bornheimer to appear

for a continued deposition at Debtors' Counsel's office and to extend Debtors' deadline to

submit designations of the transcript of the deposition of Bornheimer (the "Motion to Compel").

[dkt item 227]  Debtors assert that the parties had scheduled the completion of Bornheimer's

deposition testimony for May 11, 2017, in Kansas City, but that due to a health-related incident,

Debtors' Counsel was unable to travel from New York to Kansas City for the deposition.  As a

result, the parties apparently agreed to conduct the examination of Bornheimer on May 23, 2017,

the day before the scheduled evidentiary hearing.

On May 22, 2017, the Noteholder filed a Motion to strike the Debtors' POC Reply (the

"Motion to Strike"), asserting, *inter alia*, that Debtors' POC Reply improperly raises new

arguments and submits new evidence for the first time, which were neither raised nor submitted

in Debtor's POC Objection.  [dkt item 229]

On May 22, 2017, the Noteholder filed a response to the Motion to Compel.  [dkt item

230]

On May 22, 2017, the Court entered an Order that allowed the parties to file designations

of the transcript of the continued deposition of Bornheimer by no later than June 1, 2017 at 5

p.m. (the "Order on Motion to Compel").  [dkt item 231]

On May 24, 2017, the Court held the evidentiary hearing on the Parties' Motions (the

"Hearing"), at which the Court ruled on a number of evidentiary issues and directed the parties

by June 1, 2017, to file a joint letter regarding whether the parties had any objections to the filed

exhibits that the parties did not move into evidence at the Hearing.  Additionally, the Court

directed Debtors to file a letter regarding the Accountant Report and Bornheimer deposition

excerpts by June 1, 2017, with any responses to be filed by June 8, 2017.

On June 1, 2017, the parties filed a joint letter regarding the admission of evidence (the "Joint Letter").  [dkt item 245]

On June 1, 2017, Debtors filed a letter regarding the Accountant Report.  [dkt item 246]

On June 1, 2017, Debtors filed a letter regarding the Bornheimer depositions and designations of deposition transcripts.  [dkt items 247, 248]

On June 2, 2017, the Noteholder filed a letter regarding the Bornheimer depositions.  [dkt item 249]

On June 8, 2017, the Noteholder filed an objection to admission of the April Bornheimer deposition excerpts and submitted counter-designations and also filed a letter in opposition to admission of the Accountant Report.  [dkt items 260, 261]

In the aggregate, the Court has been presented with over 6,000 pages of proposed trial exhibits, including testimonial affidavits, appraisal reports, and deposition excerpts.  The evidentiary issues addressed in this Order relate only to issues not resolved at the Hearing. Closing arguments on the Parties' Motions has been scheduled for July 12, 2017.

## DISCUSSION

### *Debtors' Standing to Challenge the Noteholder's Claim and Modify the Noteholder's Rights*

Noteholder asserts that Debtors may neither challenge its claim nor modify its rights because Debtors were not parties to the CDC Plan or the underlying loan documents incorporated therein, and have no contractual privity with the Noteholder.  Debtors assert they have standing to object to the claim and modify the treatment of Noteholder's rights.  However, the parties do not separate their arguments regarding Debtors' standing to object to Noteholder's proofs of claim from Debtors' standing to modify Noteholder's rights through a chapter 11 plan,

but the Court will address each issue in turn.

***Claim Objection***

If a note holder or owner, or mortgagee, or servicer acting on behalf thereof, files a proof of claim under which it asserts a lien against property of the estate, a party in interest may object to the claim and seek a determination that the claimant is not entitled to enforce the note or mortgage at issue, or that the note or mortgage are not enforceable against the debtor or the estate; a bankruptcy court may make such a determination after notice and a hearing. *See* 11 U.S.C. § 502(b)(1); *In re Escobar*, 457 B.R. 229, 236 (Bankr. E.D.N.Y. 2011); *see generally In re Tender Loving Care Health Svs., Inc.*, 562 F.3d 158 (2d Cir. 2009). "An objecting party 'bears the initial burden of production and must provide evidence showing the claim is legally insufficient' under 11 U.S.C. § 502." *In re Lehman Bros. Holdings Inc.*, 519 B.R. 47, 53 (Bankr. S.D.N.Y. 2014) (quoting *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (S.D.N.Y. 2014)); *In re Richmond*, 534 B.R. 479, 483 (Bankr. E.D.N.Y. 2015), *aff'd sub nom.*, *Richmond v. Select Portfolio Servicing Inc.*, No. 14-41678-CEC, 2016 WL 743397 (E.D.N.Y. Feb. 22, 2016).

Section 502(a) of the Bankruptcy Code provides "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including … objects." Under § 502(b), if a party in interest objects to a claim, the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount …" Under § 101(5)(A), a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *See Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412 (2017). Under Section 102(2), a "claim against the debtor" includes a claim against property of the debtor. The parties here do

not dispute that Noteholder has a claim against Debtors' estates;[4] rather, the issue is whether

Debtors have standing to challenge the amount of the claim.

This Court's analysis necessarily begins by looking to the language of the statute itself to

determine if the statute is plain or ambiguous. *See RadLAX Gateway Hotel, LLC v.*

*Amalgamated Bank*, 566 U.S. 639, 649, 132 S.Ct. 2065, 182 L.Ed.2d 967 (2012); *Lamie v.*

*United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); *United*

*States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re*

*Addams*, 564 B.R. 458, 462–63 (Bankr. E.D.N.Y. 2017).  "[I]n determining plainness or

ambiguity, courts are directed to look 'to the language itself, the specific context in which that

language is used, and the broader context of the statute as a whole.' " *In re Phillips*, 485 B.R. 53,

56 (Bankr. E.D.N.Y. 2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843,

136 L.Ed.2d 808 (1997)); *Addams*, 564 B.R. at 463.  "Courts are required to apply the plain

meaning of a statute, unless the statute is ambiguous or applying the unambiguous plain meaning

would yield an absurd result." *Id.*  If the statutory language is clear, a court's analysis must end

there. *Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n*, 530 U.S. 1, 6, 120

S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of

the courts—at least where the disposition required by the text is not absurd—is to enforce it

according to its terms."); *Addams*, 564 B.R. at 463.  Statutory terms are often "clarified by the

remainder of the statutory scheme—because the same terminology is used elsewhere in a context

that makes [their] meaning clear, or because only one of the permissible meanings produces a

substantive effect that is compatible with the rest of the law." *United Savings Assn. of Texas v.*

---

[4] *See e.g. In re Wilcox*, 209 B.R. 181, 182 (Bankr. E.D.N.Y. 1996)("this Court concludes that Wendover holds a 'claim' against the Debtor's estate, even though no privity of contract ever existed between it and the Debtor.")

*Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988); *Rake v. Wade*, 508 U.S. 464, 474 (1993); *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004); *In re Coughlin*, No. 11-76202-AST, 2017 WL 2602330, at *7 (Bankr. E.D.N.Y. June 15, 2017).

As noted above, under § 502(b), a party in interest may object to a claim. Neither Sections 101, 502, 1109 nor any other Section in the Bankruptcy Code defines the term "party in interest." However, a debtor is specifically referenced as a "party in interest" in various sections of the Bankruptcy Code, such as in Section 1109(b), which states that "[a] party in interest, including the debtor … may raise and may appear and be heard on any issue in a case under this chapter." *See In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (noting the meaning of "party in interest" must be construed in light of the Bankruptcy Code and is determined on an *ad hoc* basis.)[5] Because § 502(b) provides that a party in interest may object to a claim, and because Section 1109(b) expressly allows a debtor to be heard on any issue in a case, it logically follows that, on the face of the statute, a debtor is a party in interest for purposes of Section 502(b)

Additionally, the Bankruptcy Code contemplates that a debtor acting as trustee has standing to object to a claim. Under § 1101(1), a "debtor in possession" means debtor. Under § 1107, a debtor in possession is a fiduciary installed as trustee to manage the estate in the interest of the creditors. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978, 197 L. Ed. 2d 398 (2017). Under § 1106(a)(1), a trustee has an obligation to perform certain duties specified in § 704(a). Section 704(a)(5) provides that if a purpose would be served, the trustee is obligated to "examine proofs of claims and object to the allowance of any claim that is improper;…"

The fact that Debtors here are not parties to the original Loans or the CDC Plan does not

---

[5] Additionally § 1121(c) provides that "any party in interest, including the debtor…may file a plan…"

mean they are not parties in interest for purposes of filing a claim objection. Debtors are debtors in possession acting as fiduciaries of the bankruptcy estates and thus have a duty to object to an improper claim if it serves a purpose. The property of Debtors' estates includes the Properties at issue here, which are encumbered by the Loans. Noteholder filed a proof of claim against Debtors' estates relating to property of the estates. Debtors have a direct legal and pecuniary interest in objecting to the Noteholder's claim and such an objection serves a purpose to the estates. Thus, Debtors have standing to challenge Noteholders claims.[7]

### *A Plan Modifying Noteholder's Rights*

The Court next addresses Noteholder's assertion that Debtors may not modify its rights through a chapter 11 plan of reorganization. A court shall confirm a plan under § 1129(a)(1), if the plan, among other things, complies with all applicable provisions of the Bankruptcy Code. Section 1123(a) provides for the mandatory requirements of a plan. Section 1123(b) provides for the permissive contents of a plan, subject to subsection (a), and states, among other things, that a plan may

> (5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; and …

---

[7] Noteholder does not assert that Debtors lack prudential standing to object to its claim. This Court notes that the Second Circuit Court of Appeals has on several occasions addressed the requirement that a debtor have a pecuniary interest in the matter at issue in order to have standing to participate in bankruptcy matters. *See, e.g., In re Friedberg*, 634 F. App'x 333 (2d Cir. Feb. 24, 2016) (summary order) ("[W]e conclude that the bankruptcy court correctly held that Friedberg lacked standing to oppose the approval of the settlement agreement because he had no pecuniary interest directly and adversely affected by the bankruptcy court's order adopting the settlement."); *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) ("[T]o have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court.") (internal quotations omitted); *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) ("[A] Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid."); *In re Roberts*, 20 B.R. 914, 917 (Bankr. E.D.N.Y. 1982). This Court need not decide prudential standing here as it has not been asserted by Noteholder, but does note, however, that if Debtor's pending claims objections were fully sustained, a legitimate prospect of a surplus estate does exist.

*See In re Pomilio*, 425 B.R. 11, 18 (Bankr. E.D.N.Y. 2010).

As discussed above, the Court's analysis necessarily begins by looking to the language of the statute itself to determine if the statute is plain or ambiguous.  *See e.g. Addams*, 564 B.R. at 466 (holding that the similarly worded § 1322(b)(2) anti-modification clause is clear and unambiguous.)  As noted, Noteholder is clearly a creditor who holds a claim under §§ 101(5)(A), 101(10)(A) and § 102(2).  Noteholder's claim is not secured only by a security interest in real property that is Debtors' principal residence.  Thus, from the clear and unambiguous language of § 1123(b), Debtors have standing to propose a chapter 11 plan of reorganization that modifies Noteholder's rights.  The Bankruptcy Code should not be read to allow the anomalous result which would ensue if a creditor holding a claim had standing to exercise its rights[8] while at the same time a debtor would be precluded from having standing to exercise its statutory rights in regard to that claim.

The Court briefly addresses Noteholder's cited cases in support of its assertion that Debtors do not have standing to modify its rights because Debtors have no contractual privity with the Noteholder.  *See Pescrillo v. HSBC Bank USA, N.A.*, 2015 U.S. Dist. LEXIS 11223 (W.D.N.Y. Jan. 30, 2015) ("a debtor has no right to restructure mortgages in bankruptcy when the debtor is not in privity with the mortgagee.")(citing *In re Parks*, 227 B.R. 20, 21 (Bankr. W.D.N.Y. 1998)); *In re Bracha Kizelnik*, 190 B.R. 171 (Bankr. S.D.N.Y. 1995).  The *Pescrillo* and *Kizelnik* courts' decisions appear to arise out of those courts' concerns that a lender should not be forced through a chapter 13 plan to essentially extend credit to a debtor that has received property without the lender's consent, is not a party to the loan contract, and against whom the lender does not have an *in personam* claim.

---

[8] *See* § 1126 ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan.")

This Court notes that the *Pescrillo* and *Kizelnik* courts' concerns are partially dealt with under chapter 11 of the Bankruptcy Code.  Chapter 11 of the Bankruptcy Code provides protections for secured creditors who do not have recourse against the debtor, which apparently is not available under chapter 13.  Section 1111(b) provides that nonrecourse secured creditors who are undersecured must be treated in chapter 11 as if they had recourse.  *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 439, n.6 119 S. Ct. 1411, 1415, 143 L. Ed. 2d 607 (1999); *In re Coltex Loop Cent. Three Partners, L.P.*, 138 F.3d 39, 46 (2d Cir. 1998).  Alternatively, the creditor may elect "to have the claim bifurcated into secured and unsecured portions."  *In re 680 Fifth Ave. Assoc.*, 29 F.3d 95, 96 (2d Cir. 1994) (holding absence of contractual privity between the lienholder and the debtor does not deprive the lienholder of the benefits and protections of § 1111(b)).  The cases cited to by Noteholder, whose analysis is rooted in the context of a chapter 13 plan, are not wholly applicable to the chapter 11 case before the Court, and these decisions could be called into question by the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78, 80, 111 S. Ct. 2150, 2152 (1991), which mandates that a court permit a Chapter 13 debtor who is the owner of real property to cure a pre-petition default under a mortgage, even if that debtor lacks privity with the mortgagee.  *See also In re Rutledge*, 208 B.R. 624, 628 (Bankr. E.D.N.Y. 1997); *In re Allston*, 206 B.R. 297 (Bankr. E.D.N.Y. 1997).  Thus, because Noteholder has a secured claim against Debtors' estates, Debtors have standing to propose a chapter 11 plan of reorganization that modifies Noteholder's rights pursuant to § 1123(b)(5) of the Bankruptcy Code.

***Specific Evidentiary Issues***

***Bondholder Reports***

Debtors seeks to admit certain bondholder reports dated April 29, 2016, Debtors' Exhibit

MMMM, and August 31, 2016, Debtors' Exhibit NNNN as establishing the amount of

Noteholders' claim, either in whole or in part (together the "Bondholder Reports"); neither party

has moved for the admission of the bondholder report dated January 30, 2015, Debtors' Exhibit

LLLL and it is therefore not admitted.  The Bondholder Reports at issue state an amount

outstanding under portions of Noteholder's debt instruments at certain times.  Noteholder objects

and asserts Debtors have not established a foundation to introduce the reports under FRE 602,

and assert the Bondholder Reports are not relevant to Debtors' claims or defenses under FRE

401, as they do not provide any evidence regarding the amounts owed by Debtors to Noteholder.

Finally, Noteholder asserts Debtors do not have standing to rely on the Bondholder Reports,

which were prepared in connection with a pooling and service agreement between Noteholder

and the Servicer, because borrowers are not parties to a pooling and service agreement and lack

standing to assert non-compliance therewith.  *Anh Nguyet Tran v. Bank of New York*, No 13-cv-

580 (RPP), 2014 WL 1225575, at *4 (S.D.N.Y. Mar. 24, 2014) (collecting cases); *see also BNP

Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 510 (S.D.N.Y. 2013).  Debtors

contend neither case stands for the proposition that a party may not use documents produced

pursuant to a pooling and service agreement as evidence, and that the Bondholder Reports are

filed and publicly available pursuant to Securities and Exchange Commission regulations.

The Court agrees that *Anh Nguyet Tran* does not preclude Debtors from relying on the

Bondholder Reports, even if they were prepared in connection with the Pooling and Service

Agreement.  Unlike the plaintiffs in *Anh Nguyet Tran*, who did not have standing to assert a

breach of the pooling and service agreement, Debtors here are not alleging a breach of such

agreement but seek to use the reports as evidence of the outstanding debt.

"Trial courts have broad discretion to determine when evidence is relevant to a given

proceeding and to refuse to admit evidence it believes to be irrelevant or whose probative value is outweighed by the risk of undue delay or waste of time." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 95 (S.D.N.Y. 2012). The Court finds the Bondholder Reports are relevant under FRE 401 because Debtors assert that the amount of Noteholder's claim can be fixed, in whole or in part, through the Bondholder Reports, and that Debtors used the Bondholder Reports in evaluating whether to purchase the Properties, which is an asserted defense to Noteholder's claims that Debtors have acted in bad faith. The probative value of the Bondholder Reports is neither outweighed by delay nor prejudice.

Federal Rule of Evidence 406 provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Character may be thought of as "a generalized description of one's disposition," while habit "is more specific": "[i]t describes one's regular response to a repeated specific situation." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 125 (2d Cir. 2016)(quoting Fed. R. Evid. 406 advisory committee's note to 1972 proposed rule). Here, the Bondholder Reports are admissible under FRE 406 to show that Wells Fargo regularly prepared and filed the reports. Wells Fargo habitually filed the Bondholder Reports as a regular response to the reporting requirements of the pooling and service agreement and requirements imposed by the Securities and Exchange Commission. Finally, there is adequate evidence in the record from testimony and other admitted exhibits to establish the foundation for these reports, and the elements of Rule 807(a) have otherwise been satisfied to admit these reports. *See* FRE 602, 807(a).[9]

---

[9] *See* Rule 807(a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

***Bornheimer April 12 Deposition***

Noteholder objects to admission of the April 12, 2017 deposition of Bornheimer,

Debtors' Exhibit RRRR (the "April 12 Deposition") and asserts that Debtors had the April 12

Deposition in their possession as of May 15, 2017, but failed to file the April 12 Deposition

pursuant to the Second Amended Scheduling Order.

The First Amended Scheduling Order provides

> The parties shall submit any direct testimony from themselves and
> any witness under their control (including experts and appraisers)
> by Affidavit signed by the witness(es).  Affidavits shall be filed with
> the Court no later than May 1, 2017.

The Second Amended Scheduling Order provides

> The parties shall submit any direct testimony from themselves and
> any witness under their control (including experts and appraisers)
> from whom an affidavit could not be obtained prior to May 5, 2017
> by supplemental Affidavit signed by the witness(es), as well as any
> deposition transcripts by no later than 4:00 pm EDT May 15, 2017.

Debtors filed portions of the deposition on April 26, 2017 as an exhibit to their Motion to

Modify, as opposed to specifically for use at the Hearing. [dkt item 159]

Both scheduling Orders provide

> Failure to strictly comply with any of the provisions of the Order
> may result in the automatic entry of a dismissal, sanctions, a default,
> or other relief as the circumstances warrant, in accordance with
> Federal Rule of Civil Procedure 16, as incorporated by Federal
> Rules of Bankruptcy Procedure 7016 and 9014.

---

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain
through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

FRE 807(a).  *See generally In re Teltronics Services, Inc.*, 29 B.R. 139, 165 (Bankr. E.D.N.Y. 1983)(addressing
former Rule 803(24)).

The Order on Motion to Compel provides

> the Debtors and MLMT may file designations of the transcript of the continued deposition of Mr. Bornheimer by no later than June 1, 2017 at 5 p.m.

In accordance with Rule 1001, directing the Bankruptcy Rules be "construed to secure the just, speedy and inexpensive determinations of every case and proceeding," this Court will admit the portions of the April 12 Deposition filed on April 26, 2017 as an exhibit to their Motion to Modify, but not the balance of that deposition; Debtors failed to comply with the Second Amended Scheduling Order when they did not file the remainder of the April 12 Deposition with the Court by May 15, 2017.[10]  In accordance with Rule 1001, Noteholder's objections and counter-designations of the April 12 Deposition filed on June 8, 2017, pursuant to the Court's directions at the evidentiary hearing are admitted.  Noteholder's specific objections to the portions designated by Debtors will be subsequently addressed by the Court.

### Bornheimer May 23 Deposition

Debtors request portions of the May 23, 2017 Bornheimer deposition (the "May 23 Deposition") be admitted into evidence.  Noteholder has not objected to admission of the May 23 Deposition, but has submitted counter-designations and objections to Debtors' designated portions.  Debtors sent the May 23 Deposition transcript to chambers with a copy to Noteholder, but have not publically filed the May 23 Deposition transcript through the Court's CM/ECF system.

The Court finds that Debtors have complied with the Order on Motion to Compel and the Court's directions at the evidentiary hearing and that Debtors' deposition designations from the May 23 Deposition should be admitted, subject to any of Noteholder's specific objections to be

---

[10]  The Court notes that the Debtors' Counsel's health issues did not preclude Debtors from filing the April 12 Deposition by the deadline as those issues arose after the deadline.

subsequently addressed by the Court.  Additionally, Noteholder's counter-designations of the May 23 Deposition are also admitted.

***Accountant Report***

Debtors request that the Accountant Report be admitted and that Midland be directed to fully cooperate with Debtors' request for information related to the bank statements purported to be analyzed.  Noteholder opposes Debtors' requests and assert they are an attempt to effectively reopen discovery and the evidentiary hearing.

Debtors first brought the existence of the bank statements to the Court's attention on April 26, 2017, when they filed the Motion to Modify and attached certain documents obtained from Centrum on April 20, 2017.  Approximately two weeks thereafter, Debtors filed the Application to Employ Accountant.  Debtors assert that Noteholder did not produce the Central Account bank statements until May 18, 2017.  Debtors did not submit the proposed Accountant Report as a separate exhibit pursuant to any of the Court's Scheduling Orders neither did Debtors submit the Accountant Report with their letter dated June 1, 2017.  However, as with the challenged portions of the first Bornheimer deposition, consistent with Rule 1001, the Court will not deny admission of the Accountant Report due to failure to submit it as a designated exhibit.

However, the Court will not admit the Accountant Report into evidence because the Court cannot ascertain its authenticity under FRE 901, cannot determine whether the summaries are in fact accurate to prove the content of the writings which they purport to summarize under FRE 1006, nor has the accountant who purportedly prepared the report been qualified as an expert pursuant to FRE 702. *See generally Needham v. White Laboratories*, 639 F.3d 394, 403 (7th Cir. 1981)(proponent of purported summaries must lay a proper foundation for admissibility of summarized materials and accuracy of summary); *In re Fanaras*, 263 B.R. 655 (Bankr. D.

Mass 2001)(same).

In spite of this ruling, Debtors have not waived their right to assert that mismanagement by Midland of the funds available to CDC and its failure to comply with the waterfall provisions of the CDC Plan caused a default under the Loans and thereby created the opportunity for Noteholder to charge default interest (a very significant issue in these cases). Debtors have provided documents that they have obtained through third-parties to support this assertion and Debtors timely brought that evidence to the Court's attention. Noteholder's Motion to Strike Debtors' POC Response is otherwise denied.

**Exhibit 143**

Debtors object to the admission of Noteholder's exhibit 143, which purports to be an email from CMC-CMI Corporation ("CMC") to Noteholder's Counsel regarding CMC's unfamiliarity with Debtors and this bankruptcy case. Exhibit 143 is not admitted because it has not been authenticated pursuant to FRE 901 and its relevance has not been demonstrated under FRE 401.

**Exhibits 156-162**

Debtors object to admission of Noteholder's exhibits 156-162. Each of these exhibits purport to be records concerning how funds may have been disbursed or fees or other expenses charged against the Loans after confirmation of the CDC Plan. As these have not been authenticated under FRE 901, and as their relevance has not been demonstrated under FRE 401, exhibits 156-162 will not be admitted.

Accordingly it is hereby

**ORDERED**, that Debtors have standing to proceed on their claim objection; and it is further

**ORDERED**, that Debtors have standing to propose a plan of reorganization that modifies

Noteholder's rights as a holder of a secured claim; and it is further

      **ORDERED**, that the Bondholder Reports are admitted into evidence; and it is further

      **ORDERED**, that the excerpts of the April 12 Bornheimer Deposition attached to the Motion to Modify are admitted but the remainder is not admitted and Noteholder's April 12 counter-designations are admitted; and it is further

      **ORDERED**, that Debtors' May 23, 2017 Bornheimer Deposition designations are admitted and Noteholder's May 23 deposition counter-designations are admitted; and it is further

      **ORDERED**, that Debtors are directed to file the May 23 Deposition through the Court's CM/ECF filing system by no later than **July 7, 2017**; and it is further

      **ORDERED**, that the Accountant Report is not admitted; and it is further

      **ORDERED**, that Exhibit 143 is not admitted; and it is further

      **ORDERED**, that Exhibits 156-162 are not admitted; and it is further

      **ORDERED**, that Noteholder's and Debtors' deadline to each file a list of the admitted exhibits it intends to refer to at the closing arguments scheduled for July 12, 2017 under this Court's Amended Order Scheduling Closing Argument [dkt item 259] is hereby extended to **July 7, 2017 at 4:00 pm EDT**.



**Dated: June 30, 2017**
      **Central Islip, New York**

_____
      **Alan S. Trust**
      **United States Bankruptcy Judge**